| | |
|---|---|
| MASON SALES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:24-cv-00092 |
| | ) |
| TALENT CREATION, LTD, and | ) |
| MORNINGTON CORP., aka | ) |
| MORNINGTON CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Mason Sales, LLC ("Mason Sales") claims that Talent Creation, LTD ("Talent Creation")—a Chinese manufacturer—and Mornington Corp. ("Mornington")—the New York-based subsidiary—owe it $750,000 in unpaid sales commissions. Talent Creation and Mornington move to dismiss the First Amended Complaint (Doc. No. 63) ("FAC") for insufficient service, lack of personal jurisdiction, improper venue, and failure to state a claim. (Doc. No. 64). The motion is ripe for decision. (Doc. Nos. 65, 69, 71). For the reasons set forth below, the motion will only be granted in part under Rule 12(b)(6).

## I.    FACTUAL ALLEGATIONS

### A.    The Dispute

Mason Sales is a Tennessee company that served as a commission-based sales representative for Defendants from approximately 2004 to 2023. (FAC ¶¶ 42-46, 64-65; Doc. No. 65-2 ¶¶ 21-23). Mornington is a wholly owned subsidiary of Talent Creation. (Doc. No. 65-2 ¶¶ 3-4). Kelvin Chao, also known as Renyu Cao, controls both companies. (FAC ¶¶ 36-37).

In April 2014, Mason Sales and Talent Creation memorialized their oral arrangement in a one-page memorandum providing that Mason Sales will receive "a 3% commission on net

receivables from Rawlings Sporting Goods US, Southeastern Shirt, and any future customers," and a "2% commission on net receivables from Rawlings Japan," with commissions "paid quarterly." (Doc. No. 63-1). Mason Sales alleges an oral agreement with Mornington on the same terms. (FAC ¶¶ 16-17). Mason Sales performed, but Defendants stopped paying commissions after the first quarter of 2022, and Talent Creation terminated the relationship in June 2023. (Id. ¶¶ 78-79, 89). To recover the sales commissions due, Mason Sales asserts five claims: breach of contract, promissory estoppel, quantum meruit, equitable accounting, and breach of fiduciary duty. (Id. ¶¶ 73-158).

B.      Procedural History

This is Mason Sales's second lawsuit against Defendants. In February 2023, Mason Sales sued in the Western District of Texas. The court dismissed Mornington for lack of subject matter jurisdiction and both parties for lack of personal jurisdiction. (See Doc. No. 65-5). Mason Sales then refiled in this District on January 29, 2024. (Doc. No. 1).

Defendants moved to dismiss the original Complaint in April 2024 for insufficient service, lack of personal jurisdiction, improper venue, and failure to state a claim. (Doc. No. 23). The Magistrate Judge allowed the parties in May 2024 to engage in threshold jurisdictional discovery limited to the issue of personal jurisdiction. (Doc. No. 34). Over the next several months, the parties engaged in a series of jurisdictional discovery disputes. (See Doc. Nos. 35, 39, 40, 41, 49, 50, 51, 56, 57, 58). Jurisdictional discovery concluded in January 2025, and Mason Sales moved for leave to amend (Doc. No. 59), which the Magistrate Judge granted on March 4, 2025. (Doc. No. 62). Mason Sales filed the FAC that same day. Defendants moved to dismiss again on March 18, 2025, (Doc. No. 64), and briefing concluded on April 8, 2025, (Doc. No. 71). In June 2025, after briefing closed, Mason Sales filed affidavits of service for both Defendants through the Tennessee Secretary of State. (Doc. Nos. 72, 73).

2

In the more than two years since Mason Sales brought this case, no scheduling order has been entered; no deadlines for discovery, dispositive motions, or trial have been set; and neither party has requested a scheduling conference or otherwise sought to advance the case toward resolution on the merits. No further filings have been made by either party since June 2025 (and presumably, the parties have not conducted further discovery) despite there being no stay.

## II.    ANALYSIS

Defendants move to dismiss on several grounds. The Court will address each. For the reasons set forth below, the Court finds that service of process was proper, that the Court has personal jurisdiction over Defendants, and that venue is proper. Several of Mason Sales's legal claims, however, fail to state a claim and will be dismissed.

### A.  Service of Process

Defendants first argue that Mason Sales failed to properly serve them. (Doc. No. 65 at 2-6; Doc. No. 71 at 1-4). The Court disagrees. Though the initial service on the receptionist was insufficient, service on the Tennessee Secretary of State was sufficient.

#### 1.    Mason Sales's Efforts to Serve Defendants

The record reflects the following timeline and service efforts.

**January 29, 2024**: Mason Sales sues. (Doc. No. 1).

**February 8, 2024**: Mason Sales files a "corrected" original Complaint. (Doc. No. 9).

**March 25, 2024**: A process server serves Sharissa James at 173 Huguenot Street, Suite 200, New Rochelle, New York (Mornington's listed address). (Doc. No. 20). Ms. James is not affiliated with Mornington—she is a receptionist at the Regus office where Mornington lists its address. (Doc. No. 65-2 ¶¶ 16-24). This is Mason Sales's only attempt to personally serve either Defendant.

**April 9, 2024**: Mason Sales requests waiver of service under Rule 4(d). (Doc. No. 69-19). Defendants decline.

3

**April 15, 2024**: Defendants move to dismiss the original Complaint, raising insufficient service as a ground.  (Doc. No. 23).

**March 4, 2025**: Mason Sales files the FAC.  (Doc. No. 63).

**March 18, 2025**: Defendants again move to dismiss, raising insufficient service of process.  (Doc. No. 65).

**April 1, 2025**: Mason Sales, for the first time, raises service on the Tennessee Secretary of State in its opposition to the motion to dismiss.  (Doc. No. 69 at 7). That same day, Mason Sales sends copies of the summons and Complaint for both Defendants to the Secretary of State.  (Doc. Nos. 72, 73).

**April 17, 2025**: The Secretary of State mails certified copies to the Defendants at Mornington's Address in New York.  (Doc. Nos. 72, 73).

**May 22, 2025**:  The Secretary of State receives return receipts.  (Doc. Nos. 72, 73).

**June 9, 2025**: Mason Sales files the service affidavits.  (Doc. Nos. 72, 73).

### 2.    Service of Process Legal Standard

Rule 12(b)(5) permits the Court to dismiss an action for "insufficient service of process." Fed. R. Civ. P. 12(b)(5); see also King v. Taylor, 694 F.3d 650, 655 (6th Cir. 2012).  On a Rule 12(b)(5) motion, the "plaintiff bears the burden of proving that service was proper."  Savoie v. City of E. Lansing, No. 21-2684, 2022 WL 3643339, at *2 (6th Cir. Aug. 24, 2022) (quoting Breezley v. Hamilton Cnty., 674 F. App'x 502, 505 (6th Cir. 2017)).  "Courts may look to record evidence and uncontroverted affidavits in determining whether plaintiffs have met this burden." Spencer v. Caracal Int'l, LLC, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (cleaned up).

Rule 4(m) requires service "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  Absent a showing of good cause, the Court "must dismiss the action without prejudice or order that service be made within a specified time."  Id.

4

### 3. Mason Sales Properly Served Defendants Through the Tennessee Secretary of State

Mornington and Talent Creation are foreign companies. Rule 4(h)(1) provides that service on a foreign company in the United States must be made by following state law or by delivering process to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(A), (B).

Mason Sales's only attempt to personally serve Defendants consisted of serving Ms. James, the receptionist at Mornington's shared office in New York. That service was improper. Ms. James is not one of Defendants' officers or an authorized employee. (Doc. No. 65-2 ¶¶ 16-24). Likewise, Ms. James is not one of Defendants' managing or general agents—she is not invested "with general powers involving the exercise of judgment and discretion" and does not "operate[] at the organization[s'] highest levels." Spencer, 516 F. Supp. 3d at 759-60.

Mason Sales nevertheless contends that it properly served Defendants through Ms. James because she identified herself "as the person authorized to accept," and she did accept. (Doc. No. 69 at 6). That argument is unconvincing. The affidavit, in fact, is silent about whether Ms. James claimed authority to accept *service of process*. Ms. James's acceptance, moreover, does not establish actual unilateral authority to accept service. See Spencer, 516 F. Supp. 3d at 760.

Mason Sales's fallback—service under Tenn. Code. Ann. § 48-15-104—was proper. That statute permits service on the Secretary of State as "an agent" of a "foreign corporation" that "transact[s] business or conducts affairs" in Tennessee "without first procuring a certificate of authority to do so." Tenn. Code. Ann. § 48-15-104(b). The Secretary of State received copies of the process from Mason Sales on April 1, 2025, mailed certified copies to Mornington's address at 173 Huguenot Street, Suite 200, New Rochelle, New York on April 17, 2025, and received signed return receipts on May 22, 2025. (Doc. Nos. 72, 73). Mason Sales then filed the service

5

affidavits on June 9, 2025. (Doc. Nos. 72, 73). Mason Sales filed the FAC on March 4, 2025, so the service on May 22, 2025, was timely under Rule 4(m)'s 90-day window.

Defendants argue that service on the Secretary of State was improper because they do not "transact business" in Tennessee. (Doc. No. 71 at 2-4). They rely on Tenn. Code Ann. § 48-25-101(b)—which lists eleven types of activities that do not constitute "transacting business"—and argue that their activity falls under three exceptions to transacting business. Tenn. Code Ann. § 48-25-101(b)(5), (6), (11). Defendants' focus on "transacting business" under Section 48-25-101 is erroneous because that phrase has a defined purpose separate from the service statute. Section 48-25-101 expressly limits itself to determining when a foreign corporation must procure a certificate of authority before doing business in Tennessee. Subsection (c) provides that the exceptions are "applicable solely to determine whether a foreign corporation must procure a certificate of authority and for *no other purpose*." Tenn. Code Ann. § 48-25-101(c) (emphasis added). The Court is not aware of any decision that applies the Section 48-25-101(b) exceptions to the service statute, and Defendants cite none. <u>Alison Group, Inc. v. Ericson</u>, 181 S.W.3d 670 (Tenn. Ct. App. 2005), which Defendants rely on, is inapposite. That case applied the exceptions to a different statute and did not address Section 48-15-104(b) or service.

Even if Section 48-25-101(b)'s exceptions to transacting business applied, the service statute contains broader language. It applies not only to corporations that "transact business" in Tennessee but also to those that "conduct affairs" in Tennessee. Tenn. Code Ann. § 48-15-104(b). The plain meaning of the phrase "conduct affairs" is broad enough to cover Defendants' relationship with Mason Sales in Tennessee.

6

Because Defendants transacted business and conducted affairs in Tennessee, and neither had a certificate of authority, service on the Secretary of State as Defendants' agent was proper. The motion will be denied as to insufficient service of process.

      B.      <u>Personal Jurisdiction</u>

Defendants next argue that the Court lacks personal jurisdiction over them. (Doc. No. 65 at 6-13; Doc. No. 71 at 5). The Court disagrees. Though the Court lacks general jurisdiction over Defendants, Mason Sales has made a sufficient showing of specific jurisdiction.

### 1. Personal Jurisdiction Legal Standard

A Rule 12(b)(2) motion involves burden shifting. The plaintiff bears the "relatively slight" burden of making a prima facie showing of personal jurisdiction, which can be done "merely through the complaint." <u>See</u> <u>Malone v. Stanley Black & Decker, Inc.</u>, 965 F.3d 499, 504-05 (6th Cir. 2020). The burden then shifts to the defendant, whose motion "must be properly supported with evidence." <u>Id.</u> at 504. The burden then returns to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." <u>Id.</u> The Court views the pleadings and affidavits in a light most favorable to the plaintiff and does not weigh the controverting assertions of the party seeking dismissal. <u>Peters Broad. Eng'g, Inc. v. 24 Cap., LLC</u>, 40 F.4th 432, 437 (6th Cir. 2022).

### 2. The Court Has Personal Jurisdiction Over Defendants

Due process requires that an out-of-state defendant have "minimum contacts" with the forum state sufficient to accord with "traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). Tennessee law "extends its jurisdiction to due process's limits," so Mason Sales need only show that personal jurisdiction over Defendants comports with due process. <u>Parker v. Winwood</u>, 938 F.3d 833, 839 (6th Cir. 2019); <u>Bridgeport Music, Inc. v. Still N The Water Pub.</u>, 327 F.3d 472, 477 (6th Cir. 2003).

7

Personal jurisdiction "may be found either generally or specifically." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012). "General jurisdiction exists when the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." Malone, 965 F.3d at 502 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." Miller, 694 F.3d at 679.

The Court lacks general personal jurisdiction over Defendants. General jurisdiction exists only when a defendant is "essentially at home." Malone, 965 F.3d at 502. Viewing the evidence in the light most favorable to Mason Sales, Defendants are plainly not "at home" in Tennessee.

But the Court does have specific personal jurisdiction over Defendants. The Sixth Circuit applies a three-part test for specific jurisdiction.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968). Each factor is satisfied here.

First, Defendants purposefully availed themselves of Tennessee from at least 2014 until 2022. Mason Sales, a Tennessee company, alleges that Defendants maintained a long-running sales-representative relationship that the parties memorialized in 2014. (FAC ¶¶ 64-65; Doc. No. 63-1). Defendants called and emailed Mason Sales in Tennessee (FAC ¶¶ 21-22), sent commission reports and commission payments to Mason Sales in Tennessee (id. ¶¶ 26-27), sent orders and instructions to Mason Sales in Tennessee (id. ¶ 28), shipped products to customers in Tennessee

on orders generated by Mason Sales (id. ¶ 29), and sent the termination letter to Mason Sales in Tennessee (id. ¶ 33).  All those contacts flowed from Defendants' deliberate decision to maintain that relationship over many years.  The record supports that account.  Defendants admit that they directly shipped products to Southeastern Shirt Corporation in Mt. Pleasant, Tennessee.  (Doc. No. 69-21 ¶¶ 12, 24; Doc. No. 69-24 at 7-8, 15).  Defendants also admit that Randy Nokes—who Mason Sales describes as Defendants' Tennessee-based vice president—operated from Tennessee while providing services to Defendants.  (Doc. No. 69-20 ¶¶ 15, 19-24; Doc. No. 69-21 ¶¶ 13, 16-22; Doc. No. 69-24 at 8-9).  Tellingly, the business relationship proceeded without issue from 2014 to 2022.

Defendants respond that Southeastern Shirt was Mason Sales's customer and that Nokes was only a consultant working through his own entity.  (Doc. No. 65-6 at 4-5; Doc. No. 71 at 5).  Neither point defeats jurisdiction.  Defendants still directly sent shipments to Southeastern Shirt in Tennessee.  (Doc. No. 69-21 ¶¶ 12, 24; Doc. No. 69-24 at 7-8, 15).  And whatever Nokes' formal status, Defendants admit that he lived and worked in Tennessee and provided services to them from Tennessee.  (Doc. No. 69-24 at 8-9).

Defendants rely on Calphalon Corp. v. Rowlette, arguing that they did not purposefully avail themselves of Tennessee because their contacts only arise by virtue of Mason Sales's presence there.  228 F.3d 718, 723 (6th Cir. 2000) (holding that relationship with plaintiff in the forum did not establish purposeful availment when "the agreement was not focused on exploiting any market" in the forum).  But this case, unlike Calphalon, involves direct shipments by Defendants into the Tennessee market.  (Doc. No. 69-21 ¶¶ 12, 24; Doc. No. 69-24 at 7-8, 15).  Viewing the record in Mason Sales's favor, Defendants purposefully availed themselves of Tennessee.

Second, Mason Sales seeks payment of unpaid commissions that arise from the Tennessee-centered business activities between the parties. (FAC ¶¶ 70-98). Mason Sales's legal claims thus sufficiently and directly arise out of Defendants' Tennessee contacts. The commissions Mason Sales seeks were generated by the same business relationship that produced Defendants' Tennessee shipments, Tennessee-based operations, and Tennessee-directed communications.

Finally, exercising jurisdiction is reasonable. The Court appreciates that Defendants are in Shanghai and New York, so litigating in Tennessee burdens them. But they chose to initiate and maintain a continuous business relationship with Mason Sales for many years from 2014 to 2022. (FAC ¶¶ 64-65; Doc. No. 69-20 ¶¶ 8-11; Doc. No. 69-21 ¶¶ 7-12). Tennessee has a legitimate interest in adjudicating this dispute between a Tennessee-based company and foreign companies.

Defendants point to the 2023 Texas action that Mason sales brought against them (Doc. Nos. 65-4, 65-5), arguing that Mason Sales is conjuring up its Tennessee connections because there, it tried to invoke Texas-based connections. (Doc. No. 65 at 12). The Court will not draw that inference on the record before it, which contains sworn declarations, business records, and admissions tying the parties' relationship to Tennessee over several years.

All in all, Mason Sales has made a sufficient showing of personal jurisdiction over both Defendants. The motion will thus be denied as to personal jurisdiction.

C.    Venue

Defendants next argue that venue is improper. (Doc. No. 65 at 13-14). The Court disagrees. Defendants devote one paragraph to venue. Conspicuously absent is the following: reference to 28 U.S.C. § 1391; supporting case law; legal analysis; and an alternative district where this case supposedly belongs. Mason Sales, by contrast, responded with actual legal analysis supporting venue. (Doc. No. 69 at 16-18). Defendants did not address those arguments in reply. (Doc. No. 71).

The Court finds that venue is proper. A substantial part of the events giving rise to Mason Sales's claims allegedly occurred in this district, including the parties' Tennessee-centered relationship, Defendants' communications and payments into Tennessee, shipments into Tennessee, and the termination. See 28 U.S.C. § 1391(b)(2).

D.      Failure to State a Claim

Finally, Defendants argue that none of Mason Sales's claims satisfy Rule 12(b)(6). (Doc. No. 65 at 14-17). The breach of contract, promissory estoppel, and quantum meruit claims will survive. The equitable accounting, breach of fiduciary duty, breach of duty of good faith, bad faith, and spoliation claims will be dismissed.

### 1.      Failure to State a Claim Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Venema v. West, 133 F.4th 625, 632 (6th Cir. 2025) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). When determining whether the complaint meets this standard, the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

### 2.      The Breach of Contract, Promissory Estoppel, and Quantum Meruit Claims Survive

Defendants first argue that lack of consideration defeats the breach of contract claim, the promissory estoppel claim, the equitable accounting claim, and the good faith and fair dealing claim. (Doc. No. 65 at 14-15). They argue that the terms of the agreement did not require Mason

Sales to do anything.  (Id.).  The contract's plain language belies that reading.  The contract memorialized a "relationship" where Mason Sales would receive "commission[s] on net receivables" if it continued to bring Defendants business from "Rawlings, Southeastern Shirt and any new customers."  (Doc. No. 63-1).  By those terms, Defendants promised to pay Mason Sales commissions; in return Mason Sales promised to deliver sales.  Consideration existed.  See, e.g., Bratton v. Bratton, 136 S.W.3d 595, 600 (Tenn. 2004).  None of the above claims will be dismissed for lack of consideration.

Defendants next argue that Mason Sales fails to state a claim for quantum meruit.  (Doc. No. 65 at 15-16).  They say that the claim fails because (1) the FAC doesn't identify "services provided by Plaintiff," and (2) the FAC doesn't "demonstrate that it would be unjust" if they did not pay Plaintiff.  (Id. at 16).  Suffice it to say, a simple reading of the FAC disposes of that argument.  Mason Sales alleges that it provided sales and orders to Defendants, and they retained the benefit without paying Mason Sales.  (FAC ¶¶ 110-23).  Keeping sales profits without paying commissions owed to the sales agent is unjust.  The quantum meruit claim survives.

### 3. The Equitable Accounting, Breach of Fiduciary Duty, Breach of Duty of Good Faith, Bad Faith, and Spoliation Claims Fail

The next argument spans a single sentence.  Defendants say that the equitable accounting claim fails "because the Complaint fails to allege facts sufficient to establish a special circumstance meriting this remedy and asserts causes of action for legal remedies."  (Doc. No. 65 at 16).  Equitable accounting is "a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."  Bradshaw v. Thompson, 454 F.2d 75, 79 (6th Cir. 1972).  "It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate."  Id.  Though Defendants alone know how much money Mason Sales brought in (FAC ¶¶ 124-40), Mason Sales asserts claims for damages,

and that amount will be determined through discovery.  Because legal remedies are adequate, the claim will be dismissed.

Defendants next argue that Mason Sales fails to state a claim for breach of fiduciary duty because no fiduciary relationship existed.  (Doc. No. 65 at 16-17).  The Court agrees.  Tennessee law requires "dominion or influence" of one party over another, or some recognized confidential relationship—e.g., attorney-client, trustee-beneficiary—to create a fiduciary relationship.  See, e.g., EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc., 398 F. Supp. 3d 258, 271-72 (M.D. Tenn. 2019).  The parties have a straightforward contractual relationship.  That Mason Sales depended on Defendants to report sales and calculate commissions does not transform the relationship into a fiduciary relationship.  The fiduciary duty claim fails.

The breach of duty of good faith, bad faith, and spoliation claims also fail.  Though Defendants do not independently raise arguments as to these claims, the Court will dismiss them sua sponte because they fail on their face.  Under Tennessee law, the duty of good faith and fair dealing is implied in every contract, but it is part of the contract claim, not a standalone cause of action.  Z.J. v. Vanderbilt Univ., 355 F. Supp. 3d 646, 699 (M.D. Tenn. 2018) ("[U]nder Tennessee law a breach of the duty of good faith and fair dealing is not a cause of action in and of itself but [is] a part of a breach of contract cause of action.") (internal quotations omitted).  The breach of duty of good faith claim fails to the extent Mason Sales asserts it separately from the breach of contract claim.  Mason Sales may proceed on breach of duty of good faith only as a theory underlying its breach of contract claim.  The "bad faith" claim appears to be an extension of that theory, so it also fails to the extent Mason Sales asserts it separately.  And finally, neither Tennessee nor federal law recognize spoliation as an independent cause of action—spoliation must be brought as a motion typically to remedy some discovery abuse.  See, e.g., Indus. Boiler & Mech.

13

<u>Co. v. Evatt</u>, 2025 WL 2268275, at \*5-6 (Tenn. Ct. App. Aug. 8, 2025) (holding that there is no separate cause of action for spoliation under Tennessee law); <u>Grassi v. Grassi</u>, 2024 WL 4792072, at \*9 (N.D. Ohio Nov. 14, 2024) ("[T]here is no federal cause of action for spoliation.").

In sum, the motion will be denied as to the breach of contract, promissory estoppel, and quantum meruit claims. The motion will be granted as to the equitable accounting, breach of fiduciary duty, breach of duty of good faith, bad faith, and spoliation claims.

## III. CONCLUSION

For the reasons set forth above, the motion to dismiss (Doc. No. 64) will be granted in part. An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

14